# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

JUAN J. CERVANTES-CORONADO, )
)
        Petitioner, )
)
v. )    Nos.   2:13-CV-36-RLJ
)             2:08-CR-38-RLJ-7
UNITED STATES OF AMERICA, )
)
        Respondent. )

## MEMORANDUM OPINION

Before the Court now is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 601]. The government filed its response [Doc. 605] and Petitioner filed a reply [Doc. 609]. For the reasons stated below, Petitioner's § 2255 motion [Doc. 601] will be **DISMISSED WITH PREJUDICE.**

## I.    BACKGROUND

The current case arose from a multi-month drug-trafficking investigation that began with the 2005 seizure of a large shipment of marijuana in Johnson City, Tennessee. *United States v. Cervantes-Coronado*, 443 F. App'x 960, 961 (6th Cir. 2011). After the seizure, federal agents learned that individuals involved with the marijuana ring also planned to distribute large quantities of methamphetamine in Tennessee and North Carolina. *Id.*

Between July 31 and August 1, 2007, Petitioner and a female companion traveled from Alabama to Texas and finally on to Ashville, North Carolina, where Petitioner rented a hotel room at Crowne Plaza on the evening of August 1. *Id.* Petitioner paid for the room, number 261, with his unemployment debit card and listed his home address on the hotel registration form. *Id.* Co-defendant drug purchasers Jackie and Tony Trivette (brothers) received

instructions from their unidentified methamphetamine supplier that they could pick up a shipment of the drug at Crowne Plaza. *Id.* Tony Trivette latter testified that he entered an upstairs hotel room on the evening of August 1 and received a three-to-four pound package of methamphetamine from a Hispanic female. *Id.* He went on to claim that the exchange occurred in the presence of an unidentified Hispanic male, who lay on the hotel room bed. *Id.* Both intercepted phone calls and surveillance evidence showed that the supplier directed the Trivettes to room 261. *Id.* at 961–62. Phone records also indicate that the supplier participated in at least five calls (either outgoing or incoming) with a cell phone frequently used by Petitioner during this same timeframe. *Id.* at 962.

On December 9, 2008, the government returned a nine-count superseding indictment in the Eastern District of Tennessee charging Petitioner and fourteen co-defendants with drug-trafficking and money laundering offenses spanning June 2004 to May 2008 [Doc. 140]. Petitioner, in particular, was charged in Count One with conspiracy to distribute and possession with the intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) [*Id.*]. Petitioner was arrested on the foregoing charges at his residence in Alabama on February 17, 2009 [Doc. 540 pp. 96, 110–11, 276–77], and found to be in possession of methamphetamine at that time [*Id.* at 96, 111–12, 277–78]. Petitioner eventually led the officers to a neighboring trailer, identifying various locations where methamphetamine was unusually hidden [Doc. 562 p. 10; Doc. 540 pp. 96–98]. The government later discovered that the utilities for the stash house were kept in Petitioner's name [Doc. 540 p. 98].

On September 2, 2009, the United States filed a notice of intent to introduce the foregoing facts at trial [Doc. 296 (referencing both drugs found on Petitioner's person as well as the various quantities of methamphetamine found hidden in his primary residence and the

2

neighboring stash house)]. Petitioner objected on the ground that the information constituted impermissible character evidence under Federal Rule of Evidence 404(b), arguing it should not be introduced because it did not establish purpose or intent to join the charged August 1, 2007 conspiracy [Doc. 562 pp. 11–13 (arguing the prosecution could not connect the drugs found in his possession or neighboring stash house to the 2007 transaction)]. The government countered by arguing that the circumstances surrounding the 2009 arrest illustrated a connection between Petitioner's residence, the trailer where the methamphetamine was hidden, and the charged conspiracy [*Id.* at 13 (suggesting that these same connections demonstrated knowledge of, and an intent to participate in, the August 1, 2007 drug transaction)]. The government relied heavily on the fact Petitioner's primary residence—the location of his 2009 arrest—matched the address used to register with Crowne Plaza in 2007 [*Id.*]. The Court decided to reserve ruling on the issue until it had heard facts in the case and the issue was properly before it [Doc. 540 p. 14].

During opening statements, trial counsel informed the jury that Petitioner was arrested in 2009 [Doc. 562 p. 67]. After acknowledging his client's "drug problem," counsel went on to explain that Petitioner did not dispute past "use[] [of] methamphetamine," possession of a "small amount" of the drug when arrested, or the fact that he led officers to the neighboring stash house on February 17, 2009 [*Id.* (stressing the quantity found was "not an amount for distribution . . . [but for] personal use")]. Counsel went on, however, to explain that this history of recreational use did not make Petitioner a drug trafficker and challenged the jury to identify a single piece of evidence—aside from his location at Crowne Plaza—that demonstrated knowledge or intent to participate in the August 2007 exchange [*Id.* at 70].

The government renewed its argument in favor of admitting testimony about the circumstances of Petitioner's February 2009 arrest in light of Petitioner's opening statement

3

[Doc. 540 p. 61 (arguing trial counsel had opened the door to the testimony by referencing Petitioner's drug habits and stash house)]. Petitioner, through counsel, maintained his objection, claiming reference the discovery of meth during his arrest was intended to establish a history of casual drug use inconsistent with large scale trafficking [*Id.* at 61–62 (claiming no evidence linked the drugs found in 2009 to the conspiracy that occurred two years earlier)]. The Court ruled in favor of the government, concluding trial counsel "opened the door" for that line of questioning [*Id.* at 62 (reasoning extent to which the drugs found in 2009 demonstrated an intent to join or knowledge of the 2007 conspiracy was a question for the jury)].

The jury found Petitioner guilty of conspiracy to distribute methamphetamine on October 21, 2009 [Doc. 332] and, on April 8, 2010, the Court sentenced him to 121 months' imprisonment [Doc. 504]. Petitioner appealed, but the Sixth Circuit affirmed his conviction. *Cervantes-Coronado*, 443 F. App'x at 965. He filed the current timely motion to vacate under 28 U.S.C. § 2255 on January 28, 2012 [Doc. 601].

## II.     STANDARD OF REVIEW AND ANALYSIS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

The petition sets forth three grounds of collateral attack.[1]  First, Petitioner asserts numerous theories of ineffective assistance by trial counsel, including: (1) introduction "404(b) evidence during her opening statement," failure to object to subsequent introduction of additional 404(b) evidence by the government, failure to request a limiting instruction for the 404(b) evidence admitted, and failure to renew her Rule 29 motion for acquittal at the close of evidence (Ground One) [Doc. 601 p. 4; Doc. 601-4 pp. 1–7].  In addition to the foregoing theories, Petitioner alleges that trial counsel deviated from professional norms by failing to object to government's repeated use of the descriptor "Hispanic" to describe various individuals associated with the 2007 drug conspiracy [Doc. 601 p. 8; Doc. 601-7 pp. 1–6 (claiming the government's invocation of the descriptor constituted an "appeal to racial, ethnic or religious prejudice" in violation of his Fifth Amendment rights under *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000))].  Second, Petitioner claims the Court erred by admitting impressible character evidence violative of Rule 404(b) and failing to provide limiting instructions *sua sponte* (Ground Two) [Doc. 601 p. 5; Doc. 601-5 pp. 1–2].  Finally, he claims ineffective assistance on appeal where counsel failed to challenge the Court's decision to admit the allegedly impermissible character evidence (Ground Three) [Doc. 601 p. 6–7; Doc. 601-7 p. 1].

A.     **Ground One: Ineffective Assistance of Trial Counsel**

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987).  First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel

---

[1]     While the Court recognizes that Petitioner originally organized the collateral challenge into four separate grounds for relief [*see generally* Docs. 601-4, 601-5, 601-6, 601-7], it finds that the first and fourth grounds are best characterized as a single ground—ineffective assistance of trial counsel—resting on multiple theories of liability.

5

did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner articulates five theories of ineffective assistance, including counsel's: (1) decision to "open the door" to his drug history by mentioning his possession of methamphetamine and knowledge of the neighboring stash house; (2) failure to object to the Court's subsequent admission of similar testimony on the basis of Rule 404(b); (3) failure to request a limiting instruction after being informed of the Court's adverse evidentiary rule; (4) failing to renew his Rule 29 motion for acquittal; and (5) failing to object to repeated use of the

6

word "Hispanic" [Doc. 601 pp. 4, 8; Doc. 601-4 pp. 1–7; Doc. 601-5 pp. 1–2; Doc. 601-6 p. 1; Doc. 601-7 pp. 1–6]. None successfully state an entitlement to collateral relief.

With regard to the first theory, Petitioner suggests that trial counsel "demonstrated a lack of sound trial strategy when she introduced . . . 404(b) evidence . . . in her opening statement[]" [Doc. 601-4 p. 2]. He claims that, but for this opening statement, the United States would have been unable to introduce evidence related to Petitioner's 2009 arrest and the jury incapable of returning a guilty verdict [*Id.* at 1–3]. The claim illustrates a misunderstanding of Rule 404(b).

While Petitioner correctly notes that Rule 404(b) prohibits the introduction of past acts or wrongs in order to establish action in conformity with a particular character trait, the rule simultaneously permits the use of such evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); *see also Davis v. United States*, No. 2:10-cv-60, 2013 U.S. Dist. LEXIS 30672, at *22 (E.D. Tenn. Mar. 6, 2013) (characterizing the rule as one of inclusion rather than exclusion since only one use—illustration of propensity—is forbidden and several permissible uses— demonstration of intent, identity, or knowledge—are provided). "[W]here a defendant is charged with a specific intent offense, as here, evidence of his prior bad acts may be admissible under Rule 404(b) for the purpose of proving such intent." *Davis*, 2013 U.S. Dist. LEXIS 30672, at *22 (citing *United States v. Love*, 254 F. App'x 511, 515 (6th Cir. 2007)); *see also United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) ("[W]here there is thrust upon the government, either by virtue of the defense raised . . . or . . . elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)."). Petitioner's decision to deny that he ever intended to distribute methamphetamine [Doc. 562 p. 67 (illustrating trial strategy in which

7

Petitioner was to be portrayed as a methamphetamine user—person with a "drug problem"—rather than someone involved in a large-scale drug-distribution conspiracy")], triggered the government's entitlement under Rule 404(b) to point to the circumstances surrounding his 2009 arrest and 2005 drug distribution as evidence that he was neither as innocent nor oblivious as suggested. *See Love*, 254 F. App'x at 515 (admitting evidence of prior drug-related bad acts in case where the defendant was charged with conspiracy to distribute); *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007) ("We have repeatedly recognized that prior drug-distribution evidence is admissible [under Rule 404(b)] to show intent to distribute."); *Johnson*, 27 F.3d at 1186, 1192 (admitting evidence of prior narcotics conviction to prove the defendant's specific intent to distribute cocaine). The relevance of Petitioner's prior conduct is reinforced by the use of his Alabama address in the North Carolina transaction and commonality of the drug involved—methamphetamine. The fact that the disputed evidence would have been ruled admissible independent of his attorney's decision to "open the door" necessarily precludes Petitioner from establishing *Strickland* prejudice.

To the extent Petitioner argues that his "other acts" were independently excludable based on Rule 403 [Doc. 601-5], Fed. R. Evid. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice."), the Court finds that its limiting instruction [Doc. 562 pp. 467–68 (instructing the jury to only consider Petitioner's prior and subsequent criminal conduct as it relates to Petitioner's "intent, knowledge, identity or absence of mistake" and not to "return a guilty verdict unless the government proves the crime charged in the indictment beyond a reasonable doubt")], precludes any such finding. *See e.g.*, *United States v. Bailey*, 61 F. App'x 233, 242 (6th Cir. 2003) (finding prejudicial effect of Rule 404(b) evidence introduced to prove specific intent did not outweigh its probative value where

8

court issued limiting instruction to the jury); *United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003) (explaining jury instruction regarding proper use of Rule 404(b) evidence "significantly ameliorated any possible unfair prejudice"); *United States v. Chesney*, 86 F.3d 564, 573 (6th Cir. 1996) (limiting instruction "lowered the prejudicial effect"); *United States v. Holloway*, 740 F.2d 1373, 1377–78 (6th Cir. 1984) ("Prejudicial impact of the evidence was blunted by a properly worded limiting instruction."). Further, that some of the "other acts" raised by the government occurred after the charged 2007 conspiracy is irrelevant for purposes of Rule 404(b) admissibility. *See United States v. Mohr*, 318 F.3d at 617–18 (explaining Rule 404(b) "covers evidence of both prior and subsequent acts" (citing *United States v. Germosen*, 139 F.3d 120, 128 (2nd Cir. 1998))); *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982) ("Subsequent conduct may be highly probative of prior intent.").

Petitioner next argues that trial counsel erred by failing to object to additional "404(b) evidence" introduced by the government over the course of its case-in-chief [Doc. 601-4 pp. 4–7 (listing several instances where government solicited testimony about Petitioner's drug history that exceeded the scope of what trial counsel mentioned during opening arguments)]. He relies primarily on Agent Jim Phillips' and Agent Jeff Bain's testimony about his 2005 conviction for distribution of methamphetamine and familiarity with the Alabama stash house in 2009 [*Id.* (suggesting counsel should have objected because the evidence exceeded the scope of (1) the "opened door" and (2) pre-trial notice)]. Neither entitles Petitioner to relief under *Strickland*.

With regard to Petitioner's first argument—testimony exceeded the scope of the "opened door"—the Court notes that both his 2005 conviction and association with the Alabama stash house constituted relevant, independently admissible evidence under Rule 404(b). *See United States v. Acosta-Cazares*, 878 F.2d 945, 950 (6th Cir. 1989) (affirming the admittance of prior

9

drug transactions under Rule 404(b) where the defendant's opening statement questioned his intent and knowledge regarding the charged conspiracy; the 404(b) evidence refuted the assertion that the defendant was a "victim of circumstances"). As such, trial counsel's failure to mount an objection on that ground cannot be characterized as deficient performance. *See e.g.*, *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) ("Counsel cannot be ineffective for failing to object to what was properly done."). With regard to Petitioner's second argument—testimony exceeded the scope of the government's pre-trial notice—the result is a bit more complicated. The fact that the government expressly notified Petitioner of its intent to mention the stash house [Doc. 296 ("The same day, [Petitioner] took agents to another residence and showed the agents hiding areas that he used to hide methamphetamine.")], precludes reliance on the unimpeded introduction of such evidence as proof of deficient performance. *See e.g.*, *Lewis v. Booker*, No. 2:12-cv-12369, 2013 U.S. Dist. LEXIS 133500, at *23–24 (E.D. Mich. June 18, 2013) (explaining trial counsel is not deficient for failing to make a meritless objection). In contrast, the government does not appear to have provided Petitioner with similar notice of its intent to introduce the 2005 conviction [Doc. 296 (omitting any reference to the 2005 distribution conviction); Doc. 601-4 pp. 4–7]. Even if trial counsel's failure to object to the admission of this information was found to be a deviation from professional norms, however, *see* Fed. R. Evid. 404(b) ("On request by a defendant in a criminal case, the prosecutor must . . . provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial."); *United States v. Arana*, 182 F.R.D. 236, 241 (E.D. Mich. 1998) (explaining failure to comply with the pre-trial notice provision of Rule 404(b) requires exclusion of the evidence omitted), Petitioner has still failed to demonstrate that he was prejudiced by the omission.

10

Contrary to Petitioner's assertion that the improperly admitted evidence so tainted his trial that a conviction would have been unattainable without evidence of the 2005 conviction, ample other evidence supported the conspiracy conviction. To prove conspiracy under 21 U.S.C. § 846, the United States must show (1) an agreement to violate the drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). The proof need not show a formal agreement—"'a tacit or material understanding among the parties'" is sufficient. *Id.* (quoting *United States v. Avery*, 128 F.3d 966, 970–71 (6th Cir. 1997)). Moreover, the United States need not prove the conspiracy by direct evidence nor does it need to show that the defendant was "'an active participant in every phase of the conspiracy;'" rather, all it needs to prove is that the defendant was "'a party to the general conspiratorial agreement.'" *United States v. Hernandez*, 31 F.3d 354, 358 (6th Cir. 1994) (quoting *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)). In other words, "[o]nce a conspiracy has been shown, only 'slight' evidence is needed to connect a defendant to [it]." *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) (quoting *United States v. Gibbs*, 182 F.3d 408, 422 (6th Cir. 1999)).

Ample basis exists independent of Petitioner's 2005 conviction to satisfy the foregoing standard. The drug supplier utilized numerous couriers to transport drugs and drug proceeds, and the Trivette brothers did not know the identities of those couriers. The couriers routinely traveled as a couple or a family, and, although they sometimes used the same vehicles, the couriers themselves changed [Doc. 540 pp. 32–33, 252–53]. On July 31, 2007, Petitioner and a female companion traveled by car from Petitioner's residence in Alabama to Houston, Texas, and then to Asheville, North Carolina, where Petitioner rented a hotel room. In that same hotel room, Tony Trivette accepted the delivery of four pounds of methamphetamine from Petitioner's

11

female companion [*Id.* at 35, 195–97, 223]. Petitioner initially testified that he had left the hotel to get dinner, but surveillance agents in the hotel parking lot testified that Petitioner did not leave the hotel during that time period [*Id.* at 327–28, 348–50, 335–36, 355–56, 356–57)]. Agent Crowe testified that he observed a male in the hotel room in Ashville when the surveillance agents were waiting for Tony Trivette to arrive and pick up the methamphetamine [*Id.* at 205–06]. Tony Trivette likewise testified that a man was present in the hotel room when the woman gave him the four pounds of methamphetamine [*Id.* at 221–22]. The telephone number intercepted via the court-authorized wiretap and used by the woman to communicate with Toney Trivette was Petitioner's telephone number [*Id.* at 163, 168–70]. In addition, Agent Bishop testified that the telephone number she identified as belonging to the methamphetamine supplier for Tony Trivette had approximately five contacts with Petitioner's telephone number on August 1, 2007 [*Id.* at 364–65]. Finally, Petitioner's own testimony was internally inconsistent and contradicted by phone records and testimony of law enforcement agents. When viewed "in the light most favorable to the prosecution," it becomes obvious that rational jurors "could [find] the essential elements of the [charged] crime beyond a reasonable doubt" without knowledge of Petitioner's 2005 distribution conviction. *Davis*, 2013 U.S. Dist. LEXIS 30672, at *28–29; *see also United States v. Ward*, 190 F.3d 483, 487–88 (6th Cir. 1999) (explaining even "meager" evidence maybe sufficient to establish the elements of conspiracy "beyond a reasonable doubt"); *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995) (explaining circumstantial and direct evidence should be accorded the same weight).

"When the government presents other convincing or overwhelming evidence, [courts] may deem the [improper] admission of 404(b) evidence mere harmless error." *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999); *see also United States v. Stephens*, 549 F.3d 459, 463–

64 (6th Cir. 2008) (finding no basis for reversing a conviction where the reviewing court had confidence that the judgment was "not substantially swayed by the error," given the quantity and quality of properly admitted evidence). The fact that properly admitted evidence "readily satisfie[d] the [elements] for a conspiracy conviction," *Cervantes-Coronado*, 443 F. App'x at 964, is fatal to Petitioner's request for collateral relief, s*ee United States v. Carney*, 387 F.3d 436, 452 (6th Cir. 2004) (affirming conviction where any Rule 404(b) error would have been harmless); *Tompkin v. Phillip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (explaining evidentiary errors merit reversal only where "more than harmless").[2]

Petitioner's third theory of ineffective assistance—failure to request a limiting instruction after the Court ruled against him on the Rule 404(b) issue [Doc. 601-4 pp. 6 (suggesting counsel should have "immediately requested that the Court give some curative or limiting instructions to the jury as to the proper use of [the 404(b)] evidence")]—fails because the record conclusively precludes any finding of prejudice. The following instruction was provided to the jury:

> You have heard testimony that the defendant committed crimes other than the ones charged in the Indictment. If you find that the defendant did those crimes you may consider the evidence only as it relates to the government's claim on the defendant's intent, knowledge, identity or absence of mistake or accident. You must not consider it for any other purpose. Remember that the defendant is on trial here only for the offense charged in Count [One] of the Indictment, not on

---

[2]      To the extent Petitioner claims trial counsel "made matters much worse" while cross-examining several witnesses [Doc. 601-4 p. 5], he has failed to explain how those cross-examinations negatively impacted the jury's verdict. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."). Rather, the record shows that counsel elicited testimony from Agent Phillips that he had no information about Petitioner's involvement with the Eastern District of Tennessee [Doc. 540 p. 104]. Agent Phillips went on to concede that Petitioner was not involved in a two-and-a-half-pound methamphetamine transaction in 2008 [*Id.* at 105–09]. Trial counsel also effectively cross-examined Agent Phillips to show that there was no indication that Petitioner was actually involved in drug trafficking during the time frame of the alleged 2007 conspiracy [*Id.* at 109]. Absent prejudice, the claim fails.

13

the other facts. Do not return a guilty verdict unless the government proves the crime charged in the Indictment beyond a reasonable doubt.

[Doc. 562 pp. 467–68]. The Sixth Circuit has endorsed similar instructions on numerous occasions in the past, *see* Sixth Circuit District Judges Association Pattern Criminal Jury Instructions Committee, *Pattern Criminal Jury Instructions* § 7.13(1), (2) (1991) (mirroring language adopted by this Court in the relevant jury instruction); *see also United States v. Wheeler*, 349 F. App'x 92, 98 (6th Cir. 2009) (upholding 404(b) jury instruction directing that the "other acts evidence only be considered 'in deciding whether the defendant . . . knowingly possessed the firearm' . . . and 'not . . . any other purpose'"), and Petitioner would have received the precise same instruction had one been requested. The fact that the Court ultimately issued the exact instruction Petitioner now claims should have been requested precludes any finding that he was prejudiced by trial counsel's failure to do so.

Petitioner's fourth theory of ineffective assistance—failure to raise a renewed Rule 29 motion for acquittal at the close of the defense's case [Doc. 601-4 pp. 6–7 (claiming failure to make the motion was prejudicial because (1) it denied Petitioner a chance at acquittal and (2) subjected his case to a less scrutinizing standard of review on appeal)]—fails.

Petitioner has failed to identify any facts that lead the court to believe the proposed Rule 29 motion would have been successful. *See* Fed. R. Crim. P. 29(a) (mandating a court grant the Rule 29 motion were the evidence is insufficient to sustain a conviction); *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) (explaining the court must, "after viewing the evidence in the light most favorable to" to the government, determine whether a rational trier of fact could find the elements of the crime beyond a reasonable doubt). The only "new" evidence presented after the Court denied the original motion for acquittal was Petitioner's own testimony,

14

which was inconsistent, contradicted by phone records, and controverted the testimony of agents. Nothing introduced would have altered this Court's earlier conclusion that ample grounds existed for a reasonable juror to find Petitioner guilty beyond a reasonable doubt. S*ee United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994) (explaining "credibility of witnesses is exclusively the province of the jury"). Failure to renew the motion was thus neither ineffective nor prejudicial. S*ee e.g.*, *United States v. Hogan*, No. 2:06-cr-10, 2015 U.S. Dist. LEXIS 3090, at *27–30 (E.D. Tenn. Jan. 12, 2015) (finding counsel was not ineffective for failing to renew Rule 29 motion which would have been denied by the district court regardless); *Woods v. United States*, No. 2:07-cv-68, 2010 U.S. Dist. LEXIS 31760, at *7 (E.D. Tenn. Mar. 31, 2010) ("An attorney does not render ineffective assistance by failing to renew a motion for acquittal which was doomed to fail since there was sufficient evidence."); *see also United States v. Allen*, 390 F.3d 944, 951 (7th Cir. 2004) ("[F]ailure to file a motion for acquittal was not prejudicial where the evidence against the defendant was sufficient to support a conviction."). It is irrelevant that counsel's omission subjected Petitioner to a more demanding standard of review on appeal because, under any standard, there was no defect in the government's evidence. *See e.g.*, *United States v. Quintero-Barraza*, 78 F.3d 1344, 1350–51 (9th Cir. 1995) (explaining failure to preserve the more stringent level of review does not rise to the level of *Strickland* ineffectiveness); *United States v. Hourani*, No. 96-2049, 1999 U.S. App. LEXIS 43, at *12 (6th Cir. Jan. 8, 1999) ("Failure to move for acquittal for insufficiency of evidence, especially without specifying the defect or on a meritless claim, merely to preserve a more indulgent standard of review, is simply not deficient representation.").

Petitioner's fifth and final theory of ineffective assistance at the trial level claims counsel rendered constitutionally deficient representation when he failed to object to the government's

repeated use of the word "Hispanic" to describe people, drugs, and voices [Doc. 601-6 pp. 1–6 (citing numerous occasions where government witnesses described someone as a 'Hispanic male" or "Hispanic female," the voice on the phone as of Hispanic origins, and one instance where an agent defined "ice" as "methamphetamine from Mexico")]. He cites numerous cases from other circuits, including *Cabrera*, and *United States v. Ramirez-Fuentes*, 703 F.3d 1038 (7th Cir. 2013), as proof that use of ethnic or racial descriptors is unfairly prejudicial to the criminal defendant [*Id.* at 1, 5–6]. The claim lacks merit.

In contrast to Petitioner's overly-broad interpretation, this Court finds that *Cabrera*, *Ramirez-Fuentes*, *United States v. Cruz*, 981 F.2d 659 (2nd Cir. 1992), and *United States v. Doe*, 903 F.2d 16 (D.C. Cir. 1990), stand only for the proposition that testimony purporting to tie criminal propensity to a particular race or ethnicity is improper where the defendant possess those racial or ethnic characteristics. *See* 703 F.3d at 1045 (finding references to "Mexican methamphetamine" were "unnecessary and avoidable references to [the defendant's ethnicity]"). The Sixth Circuit adopted a similar stance in *United States v. Shalash*. *See* 108 F. App'x 269, 279 (6th Cir. 2004) (drawing distinction between references to ethnicity which link members of that class with a particular trait or propensity and those invoked for purposes of identification).

In *Shalash*, the defendants challenged at least a dozen references to their ethnicity as Arabs during trial. 108 F. App'x at 269–71. The Sixth Circuit denied the challenge, explaining that at least some of the references were essential to prove identity and that the other references, to which the defendants had not timely objected, did not amount to plain error nor render the trial unfair. *Id.* The court found that the propriety of each reference depended "not [on] whether ethnicity was mentioned[,] . . . [but] whether the government [intended that reference] to connect ethnicity with criminal propensities." *Id.* at 278. Here too, all but two of the highlighted

16

references [Doc. 601-7 pp. 2–4]—exceptions being Agent Phillips' defining "ice" as "methamphetamine from Mexico" and Agent Bishop's statement regarding "Hispanic sources of supply . . . chang[ing] their phones"—involved witness identification of unknown individuals or voices. *See Shalash*, 108 F. App'x at 279 (finding no error where the prosecution "occasionally asked witnesses to identify the race of an individual . . . [but never] for the purpose of establishing a *modus operandi* common to Arab [criminal] operations or some other criminal propensity"). Any objection to these statements would have been overruled; failure to raise one cannot serve as the basis for an ineffective assistance claim. *See e.g.*, *Clark v. United States*, No. 4:09-cv-387, 2012 U.S. Dist. LEXIS 116243, at *16–17 (E.D. Tex. Aug. 16, 2012) ("A failure to object does not constitute deficient representation unless a sound basis exists for objection.").

Petitioner has also failed to show how failure to raise either of the remaining proposed objections resulted in prejudice. The Court, not the government, prompted Agent Phillips to define "ice" after he used the term to describe the type of methamphetamine found during Petitioner's 2009 arrest [Doc. 540 pp. 97, 102, 107]. Further, informing the jury about the origin and nature of drugs discovered in Petitioner's possession in 2009 cannot be said to have impermissibly connected his ethnicity—Hispanics—with a propensity for dealing methamphetamine in general. *Cf. Ramirez-Fuentes*, 703 F.3d at 1045–46 (relying exclusively on the fact that the confiscated drug was "Mexican Methamphetamine," "produced by Mexican nationals" as evidence that the Hispanic defendant should be held legally responsible for it); *Cabrera*, 222 F.3d at 593–94 (relying on fact that confiscated drug was packed in "flat wafers," a type of packaging common among Cuban drug dealers as evidence that the Cuban defendant should be held legally responsible for it). Even if Agent Bishop's comment that "[a] lot of Hispanic sources of supply will change their phones" [Doc. 540 p. 385], might be improper

under certain circumstances, the fact that the government never attempted to show that Petitioner acted in a similar manner precludes any finding of prejudice. *See e.g.*, *Hall v. Bell*, No. 2:06-cv-56, 2010 U.S. Dist. LEXIS 23319, at 165 (E.D. Tenn. Mar. 11, 2010) (rejecting ineffective assistance claim premised on failure to object where the petitioner incurred no prejudice as a result of trial counsel's omission). Petitioner's first ground for relief fails as a matter of law.

### B. Ground Two: Improper Admission of 404(b) Evidence

Petitioner's second ground of collateral attack—which appears to be a mere variant of his first ground—claims that the Court committed "a clear and plain error" by admitting the 404(b) evidence [Doc. 601-4 p. 3; 601-5 pp. 1–2 (arguing the Court's ruling was somehow "ambiguous" and, as a result, counsel failed to mount an effective objection to it)]. The ground fails because it: (1) has been procedurally defaulted and (2), for reasons previously discussed, lacks merit.

Unlike Petitioner's ineffective assistance claims, Ground Two could have been litigated on direct appeal, but was not. *Compare Shropshire v. United States*, No. 1:08-CV-261, 2011 U.S. Dist. LEXIS 103765, at *37 (E.D. Tenn. Sept. 13, 2011) (explaining that a § 2255 motion is not a substitute for properly raising issues on direct appeal and failure to do so subjects a claim to procedural default), *and Bousley v. United States*, 523 U.S. 614, 621 (1998) (explaining even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first raised on direct appeal), *with United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010) (explaining ineffective assistance claims are properly raised for the first time in a collateral proceeding). "In the case where the [Petitioner] has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise the arguments and . . . would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334

18

F.3d 520, 528 (6th Cir. 2003); *accord United States v. Frady*, 456 U.S. 152, 167–68 (1982). The "hurdle" to excuse procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attacks generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Nowhere in the petition does Petitioner purport to be "actually innocent" [*see generally* Docs. 601–601-7]. Instead, Petitioner appears to rely on the alleged ineffectiveness of appellate counsel to establish good cause for his failure to raise the defaulted claim. While it is true that ineffective assistance of counsel during the appeal process can serve as a basis for excusing procedural default, *Sullivan v. United States*, 587 F. App'x 935, 942–45 (6th Cir. 2014), a petitioner attempting to rely on defective assistance to establish good cause bears the burden of demonstrating constitutionally deficient performance. *Id.* For the reasons discussed in Ground Three, the Court finds Petitioner did not receive ineffective assistance of appellate counsel and as a result, has failed to establish good cause for the procedural default of Ground Two. *See Acevedo v. United States*, No. 1:10-CV-46, 2012 U.S. Dist. LEXIS 9817, at \*19–20 (E.D. Tenn. Jan. 27, 2012) (refusing to excuse procedural default where the petitioner could not establish constitutionally deficient assistance on appeal).

Even if he were able to establish good cause, Petitioner cannot show that an inability to challenge the admission of the evidence now would result in prejudice. *See United States v. Novene*, No. 1:97-CV-249, 2000 U.S. Dist. LEXIS 23287, at \*12–13 (E.D. Tenn. June 22, 2000) (noting excusal of procedural default requires "errors [be] . . . to the [Petitioner's] actual and substantial disadvantage"). Trial counsel clearly opened the door when he referenced Petitioner's drug history during opening statements [Doc. 562 pp. 67–70]. Further, even if counsel had not opened the door, all relevant portions of Agent Phillips', Agent Bain's, and Agent Bishop's testimony would have been admissible based on the fact that Petitioner denied

19

intent to join in, and knowledge of, the charged conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) [Doc. 562 p. 67 (portraying Petitioner as a drug addict in the wrong place at the wrong time)]. *Johnson*, 27 F.3d at 1192; *Davis*, 2013 U.S. Dist. LEXIS 30672, at *22. Ground Two fails accordingly.

### C.  Ground Three: Ineffective Assistance of Appellate Counsel

Petitioner's third and final ground for collateral relief alleges appellate counsel deviated from professional norms by failing to "properly raise and argue" admission of the 404(b) evidence [Doc. 601-6 p. 1 (arguing appellate counsel erred by raising a single ground on direct appeal: whether sufficient evidence existed for a rational trier of fact to convict the defendant)].[3] The fact that counsel is not required to raise every non-frivolous issue on appeal, *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003), necessarily precludes collateral relief based upon his failure to do so.  Indeed, the process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).  As a result, it is difficult to prove that an appellate attorney violated the performance prong by presenting one argument on appeal rather than another, *Robbins*, 528 U.S. at 289, and any petitioner attempting to do so "must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'"  *Caver*, 349 F.3d at 348 (quoting *Robbins*, 538 U.S. at 289).  The fact that Petitioner's proposed challenge to Court's admission 404(b) evidence lacks merit necessarily prevents him from satisfying this burden. *See Greer v. Mitchell*, 264 F.3d

---

[3]     Petitioner appears to raise this ineffective assistance claim as both a basis for excusing procedural default of Ground Two and as a free-standing basis for collateral relief under § 2255 [Doc. 601 p. 6 (listing ineffective assistance of counsel resulting in "issue not [being] accepted on direct appeal" as an excuse for procedural default); Doc. 601-5 pp. 1–2; Doc. 601-6 p. 1].

663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."); *United States v. Ramos*, 861 F.2d 461, 468–69 (6th Cir. 1988) (holding that "when a party opens up a subject, even though it may not be strictly relevant to the case, he cannot complain on appeal if the opposing party introduces evidence on the same subject"). Petitioner is not entitled to collateral relief under Ground Three.

## III. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 601] will be **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

ENTER:

_____
s/ Leon Jordan
United States District Judge

21